# In the United States Court of Federal Claims

No. 22-420

(Filed: January 6, 2023)

**NOT FOR PUBLICATION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JESSE W. CULPEPPER, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Motion for Remand; RCFC 52.2; Substantial and Legitimate; Choice of Forum; Prejudice.

*Alexander O. Canizares*, Perkins Coie, LLP, Washington, DC, counsel for Plaintiff. *Thomas M. Ahmadifar*, Perkins Coie LLP, of counsel. *Esther Leibfarth*, *Rochelle Bobroff*, National Verterans Legal Services Program, of counsel.

*Reta E. Bezak*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. *Lieutenant Commander Ann Oakes*, Office of the Judge Advocate General, United States Navy, of counsel.

## MEMORANDUM OPINION AND ORDER

**DIETZ, Judge.**

Sergeant Jesse W. Culpepper, a former member of the United States Marine Corps ("Marine Corps"), challenges a decision by the United States Department of the Navy ("Navy") to assign him a 10 percent disability rating, which denied him a disability retirement. Before the Court is the government's motion for a voluntary remand, which Mr. Culpepper opposes. Because the Court finds that the government has provided substantial and legitimate reasons for a remand and that a remand will not unduly prejudice Mr. Culpepper, the government's motion for voluntary remand is **GRANTED-IN PART** and **DENIED-IN-PART**.

### I. BACKGROUND

Mr. Culpepper served as an active-duty member of the Marine Corps from July 23, 2012, until March 30, 2018. Compl. [ECF 1] ¶ 5. While serving, he was injured in two separate vehicular accidents that occurred in November 2014 and April 2015. *Id*. ¶ 30. Thereafter, he was diagnosed with hydrocephalus and major depressive disorder. *Id*. ¶¶ 30, 33. In October 2016, Mr. Culpepper was referred to the Integrated Disability Evaluation System ("IDES") for a medical examination by the Department of Veterans Affairs ("VA"), to assist in determining his fitness

and disability rating. *Id.* ¶¶ 13, 35. After the examination, a Medical Evaluation Board ("MEB") determined that Mr. Culpepper's hydrocephalus rendered him no longer fit for duty and referred his case to a Physical Evaluation Board ("PEB"). *Id.* ¶ 37. In January 2017, an informal PEB found that Mr. Culpepper's hydrocephalus rendered him unfit for service and requested that the VA issue disability ratings for him using the Veterans Affairs Schedule for Rating Disabilities ("VASRD"). *Id.* ¶ 38. The VA rated Mr. Culpepper's hydrocephalus under VASRD code 9434 for "Major Depressive Disorder" and concluded that Mr. Culpepper's condition was 50 percent disabling. *Id.* ¶ 39.

After an email exchange between the Navy's Council of Review Boards ("CORB") and the VA in February 2017, the VA changed its rating for Mr. Culpepper to VASRD code 8045-9434 for "Major Depressive Disorder with Traumatic Brain Injury Residual of Hydrocephalus Secondary to Status Post AV Shunt Placement." [ECF 1] ¶¶ 41, 43. The VA still assigned a 50 percent disability rating. *Id.* ¶ 43. The VA also stated that for "[Department of Defense] purposes" his "Traumatic Brain Injury [("TBI")] also diagnosed as hydrocephalus . . . would only warrant a 10 percent evaluation[.]" *Id.* ¶ 45. In March 2017, the informal PEB adopted the VA's rating of 8045-9434 and determined that Mr. Culpepper should be placed on the temporary disability retirement list with a disability rating of 50 percent. *Id.* ¶ 46.

In July 2017, Mr. Culpepper petitioned the formal PEB, requesting that he be placed on the permanent disability retirement list because his hydrocephalus was 50 percent disabling. [ECF 1] ¶ 47. In September 2017, the formal PEB concluded that Mr. Culpepper's hydrocephalus was his sole unfitting condition, stating that he is "unfit for continued services due to TBI but not for depression[.]" *Id.* ¶ 48. The formal PEB reduced his disability rating from 50 percent to 10 percent under VASRD code 8045 (Residuals of TBI). *Id.* As a result, the formal PEB found that Mr. Culpepper was ineligible to receive retirement benefits because his disability rating was less than 30 percent. *Id.*

In October 2017, Mr. Culpepper challenged the formal PEB's findings at the CORB and requested that he be placed on the permanent disability retirement list with a 50 percent disability rating for hydrocephalus using VASRD code 8045-9434. [ECF 1] ¶ 50. The CORB denied Mr. Culpepper's challenge and sustained the formal PEB's 10 percent rating. *Id.* ¶ 51. In January 2018, the PEB also denied his request for reconsideration. *Id.* ¶ 53.

Mr. Culpepper filed his complaint in this Court on April 12, 2022, challenging "the U.S. Navy's failure to award him a medical retirement for a service-incurred condition affecting his brain that rendered him unable to perform his duties." [ECF 1] at 1.[1] Mr. Culpepper argues that "[a]lthough the PEB correctly determined that [he] was unfit for continued naval service due to hydrocephalus, rather than assign a disability rating of 50% under VASRD code 8045-9434 as VA had done, the PEB arbitrarily, capriciously, and in a manner contrary to law, rated Mr. Culpepper's condition only under diagnostic code 8045 (Residuals of TBI)." *Id.* ¶ 60. Mr. Culpepper also claims that "the PEB arbitrarily, capriciously, and in a manner contrary to law, disregarded VA's initial diagnostic codes and associated ratings and requested that VA rate Mr. Culpepper's hydrocephalus pursuant to a different diagnostic code limited only to Mr. Culpepper's hydrocephalus, which unlawfully denied Mr. Culpepper of his rightfully earned

---

[1] All page numbers in the parties' filings refer to the page numbers generated by the CM/ECF system.

medical retirement benefits." *Id*. ¶ 68. Mr. Culpepper further asserts that, "[e]ven assuming for argument's sake that the PEB correctly determined that Mr. Culpepper's hydrocephalus should be rated under VASRD code 8045 alone, it misapplied VASRD code 8045's requirements." *Id*. ¶ 71.

On June 7, 2022, Mr. Culpepper and the government jointly requested that the Court issue a scheduling order for filing cross-motions for judgment upon the administrative record. Joint Mot. to Amend Sch. [ECF 5]. The Court issued a scheduling order on June 9, 2022. Order [ECF 6]. Per the schedule, the government filed the administrative record on June 17, 2022, Admin. R. [ECF 7], and Mr. Culpepper filed his motion for judgment on the administrative record on July 27, 2022, Pl.'s Mot. for J on the Admin. R. [ECF 8]. Before the deadline for the government to file their cross-motion expired on September 6, 2022, *see* [ECF 6], the government filed the instant motion for a voluntary remand pursuant to 28 U.S.C. § 1491(a)(2) and Rule 52.2 of the Rules of the United States Court of Federal Claims ("RCFC"). Mr. Culpepper opposed the government's motion. *See* Def.'s Mot. to Remand [ECF 9] at 1; Pl.'s Resp. to Mot. to Remand [ECF 10]. The Court subsequently stayed the briefing schedule pending the Court's ruling on the motion to remand. *See* [ECF 13]. The government's motion for a voluntary remand is fully briefed, and the Court has determined that a hearing is not needed.

## II.     LEGAL STANDARDS

This Court has the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2). Remand may be directed on motion filed by one or more parties or *sua sponte*. *See* RCFC 52.2(a). An agency may request a remand, without conceding error, to reconsider its previous position with respect to a governing statute or procedures that were followed. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). When an agency makes such a remand request, the court has discretion on whether to grant the remand request. *Id*. In exercising such discretion, the court considers whether the agency's concern is "substantial and legitimate." *Id*. If the court determines that the agency's concern is "substantial and legitimate," a remand is usually appropriate. *Id*. However, if the court determines that the agency's remand request is frivolous or in bad faith, the court may deny the request. *Id*. The Court may also deny a remand request if the remand would serve no useful purpose or would unduly prejudice the non-moving party. *Martinez v. United States*, 333 F.3d 1295, 1310 (Fed. Cir. 2003); *Rahman v. United States*, 149 Fed. Cl. 685, 689 (2020). When an agency requests a remand without conceding error, the agency must express some intent to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge. *Keltner v. United States*, 148 Fed. Cl. 552, 563 (2020). "[R]emand is not appropriate in all circumstances and the Court should only grant such a motion after serious consideration." *Trace Sys., Inc. v. United States*, No. 22-404, 2022 WL 2963486, at *2 (Fed. Cl. July 26, 2022).

## III.    ANALYSIS

The government requests a remand to allow the Board for Correction of Naval Records ("BCNR") "to consider in the first instance all of the claims raised in Mr. Culpepper's complaint" because the BCNR "has uniquely broad authority to consider not only the legal errors

alleged, but the broader 'interests of justice,' and, regardless of the grounds, to order full relief." [ECF 9] at 3. The government states that it views Mr. Culpepper's allegations as "serious[,]" *id.*, and that, while it does not concede error, it intends to reconsider the decision by the PEB that resulted in his not receiving the disability retirement he seeks in his complaint. [ECF 11] at 1.

The Court finds that these are "substantial and legitimate" grounds to justify a remand in this case. It is apparent that the government, while not conceding error, acknowledges the validity of Mr. Culpepper's claims, and, accordingly, intends to examine how the Navy arrived at its decision—one that resulted in his being deprived of a disability retirement. The government is not requesting that the same body which made the original decision be given another opportunity to review its own decision or to provide additional rationale for its decision. *See Keltner*, 148 Fed. Cl. at 565, 568 (denying the government's motion for voluntary remand when the government sought remand to bolster its reasons for denying the plaintiff's claim). Instead, the government seeks a remand to allow the BCNR, in the first instance, to review the Navy's actions to determine whether it correctly followed its own procedures and regulations. *See* [ECF 9] at 3. While it is possible that the Navy might not change its decision, a remand to the BCNR is a permissible and worthwhile exercise at this stage of the litigation. *See SKF USA Inc.*, 254 F.3d at 1029; *Rahman*, 149 Fed. Cl. at 691 (stating that allowing the agency an opportunity to review its decision and correct a potential error is "preferred over judicial intervention, which is most appropriate when an agency refuses to correct a substantive or procedural error"). Further, while the Court does not view the timing of the government's motion to remand—after the government agreed to a briefing schedule for disposition of this case and after Mr. Culpepper filed his motion for judgment on the administrative record—favorably, this alone is not grounds to deny a remand, especially when there is nothing in the record that leads the Court to believe that the government's request is made in bad faith. *See Thomassee v. United States*, 158 Fed. Cl. 233, 238-239 (2022). The Court trusts that the government intends to genuinely reconsider its decision, not to use the remand as a litigation tactic.

Mr. Culpepper argues that there is no requirement that the BCNR hear his allegations, that the PEB is a competent board whose decisions are reviewable by this Court, and that Mr. Culpepper's choice of forum should be respected. [ECF 10] at 3-4, 6-7. Mr. Culpepper's argument that he should have the right to select a forum is reasonable. Nevertheless, the fact that Mr. Culpepper has the right to bring his claims in this Court does not eliminate the possibility that the Court may still decide that a remand is appropriate. *See Antonellis v. United States*, 723 F.3d 1328, 1333 (Fed. Cir. 2013) ("Although there is generally no requirement that a plaintiff exhaust remedies with the applicable Corrections Board before filing suit in the Claims Court, . . . . these cases normally still proceed through the Corrections Boards because '[t]ypically, if suit is filed just in the [Claims Court], that court will require resort to a Corrections Board while the matter remains pending in that court.'" (quoting *Richey v. United States,* 322 F.3d 1317, 1323 (Fed.Cir.2003))). Here, the Court finds that the remand will serve a useful purpose and will not unduly prejudice Mr. Culpepper. Ultimately, if Mr. Culpepper is not afforded the relief that he seeks on remand, this Court will still be positioned to provide the judicial review that Mr. Culpepper seeks in his complaint.

Mr. Culpepper also argues that a remand will be prejudicial to him because of the resulting delay and the procedural requirement that he file an application with the BCNR. [ECF

4

10] at 6-8. The Court is not persuaded that Mr. Culpepper will be unduly prejudiced by any delay or inconvenience in connection with the remand. During remand, Mr. Culpepper may receive all the relief he seeks without the need for further judicial proceedings. *See* 10 U.S.C. § 1552. If the BCNR determines that relief is warranted, it will be able to simultaneously correct affected military personnel records and coordinate with the appropriate agencies to provide the requisite monetary relief. *See Wolfing v. United States*, No. 18-523, 2022 WL 17409572, at *15 (Fed. Cl. Dec. 2, 2022). Thus, a remand could lead to a more expeditious resolution. With respect to the inconvenience posed by the application, the regulations call for an application for correction to be submitted to initiate BCNR proceedings, *see* 32 C.F.R. § 723.3(a), and the Court is not inclined to interfere with the BCNR's processes.

The Court is, however, cognizant of the need to avoid unnecessary delay, and the Court does not agree with the government's requested remand period of six months with the possibility of extension. RCFC 52.2 provides that the remand period shall not exceed 6 months. *See* RCFC 52.2(b)(1)(B). It does not automatically allow for a 6-month remand period as a default. The length of a remand period depends on the circumstances in each case, including the extent of prior proceedings, whether records had previously been compiled, and the narrowness of the scope of the issues on remand. *See Holmes v. United States*, 142 Fed. Cl. 791, 794 (2019). In this case, the government has already compiled the administrative record, *see* [ECF 7], and Mr. Culpepper has already filed a motion for judgment on the administrative record, *see* [ECF 8]. Thus, Mr. Culpepper's claims, and the record supporting his claims, are readily available. Additionally, the administrative record in this case is not unusually large. For these reasons, the Court concludes that the BCNR should be able to complete its work in less than 180 days.

## IV.    CONCLUSION

For the reasons set forth above, the government's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**, and the case is **REMANDED** to the BCNR. The Court **STAYS** all proceedings in this case until further order of the Court. Pursuant to RCFC 52.2, the Court provides the following directions:

1. The remand period shall terminate on May 19, 2023. If the BCNR fails to issue its decision by expiration of the remand period, the parties shall file motions with the Court pursuant to RCFC 52.2(c).

2. Mr. Culpepper shall file an application for correction of his military record with the BCNR on or before February 6, 2023.

3. The government shall file status reports every 45 days starting from the date of this Order. The status reports shall provide detail with respect to the progress of proceedings before the BCNR.

4. The BCNR shall promptly forward by email its decision to Mr. Culpepper's counsel of record and to counsel of record for the United States and shall also forward two copies to the Clerk of the Court pursuant to RCFC 52.2(d).

5. Mr. Culpepper and the government shall each file a notice within 30 days of the BCNR's decision pursuant to RCFC 52.2(e)(1).

The Clerk is **DIRECTED** to serve a certified copy of this Order on the Board for Correction of Naval Records at: Board for Correction of Naval Records, 701 S. Courthouse Road, Suite 1001, Arlington, VA 22204-2490.

    **IT IS SO ORDERED.**

s/ Thompson M. Dietz  
THOMPSON M. DIETZ, Judge
